PAUL SHARVY v. DANIEL G. CASH and Another.[1]

November 11, 1896.

Nos. 10,075—(12).

**Execution—Excessive Levy—Indemnity Bond—Liability of Sureties.**

The plaintiff, as sheriff, levied an execution in favor of P. & C. upon certain merchandise, which was worth at least six times the amount of the judgment, as the property of the judgment debtors. It in fact belonged to a third party. Several days thereafter he levied upon the whole of the same property by virtue of two other executions, in favor of two other parties, against the same debtors. There was at no time any concert of action in the premises between the several execution creditors. The third party afterwards made affidavit of his ownership of the property, and demand for the same. Thereupon the first execution creditors, without any knowledge that the levy under their execution was excessive, or of the other executions and levies, gave the plaintiff a statutory indemnity bond in the penal sum of $10,000, entitled in their own action only. The plaintiff sold the property in bulk for the amount of the three executions and costs of sale, and paid each of the execution creditors the full amount of his judgment. The owner of the property recovered a judgment against the plaintiff for the value of the property, in the sum of $5,400; and the first execution creditors paid to the plaintiff $2,651, their full pro rata share of such judgment, which was at least three times the amount of their execution. They never authorized such excessive levy, or the sale of the entire property in bulk. The plaintiff took no indemnity bond from the other execution creditors. *Held*, in an action by the plaintiff against the sureties on the bond to recover the balance of the $5,400 paid by him on the judgment against him, that the levy on the first execution was grossly excessive, that the plaintiff was a wrongdoer as to such excess, and that the sureties are not liable to him for any further sum on the bond.

Action in the district court for St. Louis county against Daniel G. Cash and Guilford G. Hartley, as sureties on a bond executed to plaintiff, as sheriff of said county. The case was tried before Moer, J., who ordered judgment in favor of plaintiff for $4,548.77. From an order denying a motion for a new trial defendants appealed. Reversed.

*George E. Sutherland, Billson, Congdon & Dickinson,* and *Winkler, Flanders, Smith, Bottum & Vilas,* for appellants.

*Wm. B. Phelps,* for respondent.

[1] Reported in 68 N. W. 1070.

BUCK, J.    In the year 1884 Plankinton & Cudahy, of Milwaukee, had a claim against Bawden and Delano, of Phœnix, Michigan, which they placed in the hands of Mr. Masson, an attorney, for collection, who, having collected a part of it, sent the balance to Stone & Gray, attorneys at law at Houghton, Michigan, for collection; and they put this claim, amounting to $564.51, into judgment July 16, 1885. In November, 1889, Mr. Masson wrote to Stone & Gray to collect this judgment, but gave them no directions of any kind as to the time or method of making such collection.    The defendant, John T. Bawden, then resided at a place called "Ely," in the county of St. Louis, Minnesota.    Stone & Gray sent the judgment claim to Cash & Williams, attorneys at law at Duluth, for collection, and they turned it over to Teare & Davies, also attorneys at the same place.    The attorneys at Duluth acted entirely upon communications from Stone & Gray, there being no direct communication between any of the Duluth attorneys and any of the Milwaukee parties until long after the sale of the property hereinafter referred to.    In the meantime the Cudahy Brothers Company, a Wisconsin corporation, succeeded Plankinton & Cudahy; and the former, by purchase, became the owners of this judgment, and assumed the liabilities of the latter.

When Stone & Gray sent on this judgment to Cash & Williams, they also sent two other claims against Bawden and Delano,—one in favor of George W. Cady & Company, of Cleveland, Ohio, and the other in favor of the David Adler & Sons Clothing Company, a Wisconsin corporation.    Teare & Davies brought suit upon the three claims December 6, 1889, having received all these claims from Cash & Williams.    Judgment was entered in the Plankinton & Cudahy claim, in St. Louis county, January 29, 1890, for $755.30, and in favor of George W. Cady & Company, February 5, 1890, for $499.98, and in favor of the David Adler & Sons Clothing Company, February 5, 1890, for $719.    Execution was issued on the Plankinton & Cudahy judgment January 29, 1890, and placed in the hands of this plaintiff, as sheriff, on that day.    By virtue of this execution, as such sheriff, he on January 31, 1890, levied on a stock of general merchandise claimed to be Bawden's property.    Executions were issued upon the George W. Cady & Company and upon the David Adler & Sons Clothing Company judgments February 5, 1890, and the sheriff levied these two executions, on February 8, 1890, upon the same property pre-

viously levied upon under the Plankinton & Cudahy execution. The plaintiff, as sheriff, proceeded to advertise the property, which he had levied upon as the property of Bawden, for sale on February 20, 1890, at Ely, situate about 118 miles from Duluth.

In the meantime one O. D. Kinney, as assignee of the estate of one Bawden, made claim to the property levied upon; and two or three days before sale took place the sheriff went to Cash & Williams, and asked for an indemnity bond. They notified Stone & Gray, and they notified Mr. Masson, at Milwaukee, and he notified the Cudahy Brothers Company, and this company arranged for giving a bond, through the Armour Packing Company, at Kansas City, who had a branch house at Duluth; and, through the First National Bank at that place, the bond sued upon in this case was executed on February 20, 1890, —the day the sale took place. The sheriff sold the goods levied upon, in bulk, for $2,220.88, and out of the proceeds of the sale applied $153.41 in payment of his own fees, and the balance he applied as follows: Plankinton & Cudahy judgment, $758.75; George W. Cady & Company judgment, $541.75; David Adler & Sons Clothing Company judgment, $766.96. Afterwards, Mr. Kinney, as assignee of Bawden, sued the plaintiff for the value of the goods sold, and recovered a judgment against the plaintiff, the value of the goods being fixed at $5,400. Thereafter the Cudahy Brothers Company paid to the plaintiff, as sheriff, $2,651.60, as a pro rata share of the judgment obtained by Mr. Kinney, the assignee.

This action is now brought to recover of the defendant bondsmen the balance of the Kinney judgment against the plaintiff, and also to reform the bond by inserting therein the name of O. D. Kinney, and a description of the personal property mentioned in the complaint, claimed and sued for by Kinney, which it is alleged were omitted from the bond, at the time of its execution, by oversight and mistake.

The court did not allow a reformation of the bond, and, in the view which we take of the case, we do not regard that matter as material. If we assume that the bond was valid in all respects and to the extent which it would be if reformed as prayed for by the plaintiff, yet we are of the opinion that he failed to prove a cause of action against the defendants, in any event, in excess of the amount which the Cudahy Brothers Company had already paid him.

This bond, which was given and delivered to the plaintiff as sher-

iff, is entitled in the action of Plankinton & Cudahy v. Bawden and Delano, and recites a levy made by the sheriff in that action, in which action it purports to indemnify the sheriff solely for the levy so made. There is not the slightest allusion to either of the other judgments or executions. The indemnity clause must be read and construed in connection with the recitals in the bond. The sureties bind themselves to indemnify and save the sheriff harmless from all damages and costs by reason of a claim made by one claiming to own the goods, and to pay all costs and damages to which said sheriff might be put by reason thereof. It was not binding by reason of a levy under an execution issued upon the other two judgments, but in consequence of the sheriff levying an execution issued upon a judgment in the action entitled "Plankinton & Cudahy v. Bawden and Delano." No phraseology of the bond indicates any other intent, and the proof falls short of establishing any other meaning.

The execution in the Plankinton & Cudahy case was levied upon the Kinney property some seven days before the levy of the other two executions. The value of property so levied upon was six times the value of the judgment, and this was done, not because the sheriff did not know this to be an excessive levy, but because he expected other executions to be placed in his hands. In determining the sufficiency of the levy as to the Plankinton & Cudahy execution, he did not exercise his own judgment and discretion; but his deputy, who made the levy, testifies that he had closed out four stocks of goods of general merchandise of the same general kind, and knew about the value of these goods, and knew just about what they would sell for upon sale, and that the levy was upon goods which would sell at a sacrifice sale for $2,280. "An excessive levy made willfully by an officer is an abuse of his power, and renders him liable." Herm. Ex'ns, 243.

It was thus while he was holding property under the first execution knowingly worth more than three times the amount of the execution, and which in fact was worth more than six times its amount, that he demanded a bond of indemnity from the Cudahy Brothers Company. They knew nothing of the other judgments or executions, and were in no way interested in or liable for them, and there was no oral understanding or agreement that they should assume any liability for the levy made by the sheriff by virtue of the other execu-

tions. These sureties, in signing the bond of indemnity, by its very terms restricted their liability to the Plankinton & Cudahy judgment and execution. Certainly Plankinton & Cudahy or the Cudahy Brothers Company cannot be said to have ratified any conversion of the property by the sheriff by reason of his levy under the three executions, when they did not even know of the existence of the other executions, and their sureties expressly restricted the liability in the bond to the Plankinton & Cudahy execution. "The liability of the obligor is limited, however, to such acts as by the giving of the bond he must have been deemed to have knowledge of and to have authorized. For acts which it cannot reasonably be supposed he was aware of or intended, no liability attaches to him." 10 Am. & Eng. Enc. Law, 431, and notes.

Cash and Hartley are mere sureties for Plankinton & Cudahy. When the latter procured the sureties to sign the bond, they had never heard of the other judgment creditors, and, as we have stated already, knew nothing of their executions. From these acts of the sheriff, and the situation of the obligors and bondsmen, it appears that the sheriff himself was a wrongdoer, in making an excessive levy, and for such excess he is not entitled to be reimbursed by recovering upon the indemnity bond sued upon here. He has already been paid by the Cudahy Brothers Company $2,280,—three times the amount of their judgment against Bawden and Delano, and a proportionate share of the value of the property seized by him under the three executions.

Several parties may combine in committing a trespass, and thereby become liable as joint wrongdoers, but there was no combination upon the part of the three judgment creditors to seize the property of Kinney; and they were not liable for the excessive levy of the sheriff in the first instance, in which they did not participate, and had not the slightest knowledge of the seizure of the property by the sheriff. Even if Kinney might have sustained an action against them for seizing his property, whether they did so jointly or separately, and without regard to the amount each one intended to hold under such seizure, still such a right of action upon his part would not constitute a ground of action in behalf of the sheriff against Plankinton & Cudahy or their sureties upon the bond in question. This action is brought by a wrongdoer himself, in making an excessive levy in the first in-

stance; and while the conversion, as to the amount levied upon, might not be deemed complete until a demand and refusal to give up the property, yet, as to the sureties on this bond, they would only be liable to the sheriff for his retaining what was reasonably necessary to satisfy the Plankinton & Cudahy execution. Otherwise he would be taking advantage of his own wrongful acts, instead of taking further indemnity bonds from the other execution creditors to save himself harmless for the amount levied upon in excess of that which was necessary to satisfy the first execution so levied.

We have examined all of the questions raised and discussed by counsel, but do not deem it necessary to pass upon any of them, further than appears in the opinion.

Order reversed.

CANTY, J. I concur, except that I do not regard the levies made as excessive if the three executions were to be satisfied. But the levy was excessive as to the Plankinton execution alone, and, when the sheriff failed to get indemnity as to the other two executions, he should have amended his levy under the Plankinton execution, and released all but sufficient property to satisfy that execution. His failure to do this was his own fault, and no concern of those indemnifying him on the Plankinton execution.